IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOWARD L. YATES,                          6:15-CV-00022-BR

            Plaintiff,                    OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

            Defendant.


SARA L. GABIN
14523 Westlake Drive
Lake Oswego, OR 97035-8651
(503) 620-3171

            Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**ALEXIS L. TOMA**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2950

       Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Howard L Yates seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on November 22, 2010, alleging a disability onset date of April 1, 2010.  Tr. 60.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on April 1, 2013.  Tr. 39-59.  At the hearing Plaintiff was represented by an

---

     [1] Citations to the official transcript of record filed by the Commissioner on June 11, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

attorney.  Plaintiff and a vocational expert (VE) testified at
the hearing.

The ALJ issued a decision on May 10, 2015, in which she
found Plaintiff was not disabled before his December 31, 2010,
date last insured and, therefore, is not entitled to benefits.
Tr. 22-32.  Pursuant to 20 C.F.R. § 404.984(d), that decision
became the final decision of the Commissioner on October 17,
2014, when the Appeals Council denied Plaintiff's request for
review.  Tr. 1-5.  *See Sims v. Apfel*, 530 U.S. 103, 106-07
(2000).


## BACKGROUND

Plaintiff was born July 20, 1960, and was 52 years old at
the time of the hearing.  Tr. 60.  Plaintiff completed high
school.  Tr. 163.  Plaintiff has past relevant work experience as
a firefighter-equipment repairer.  Tr. 56, 146.

Plaintiff alleges disability during the relevant period due
to chronic obstructive pulmonary disease (COPD), degenerative
disc disease of the lumbar spine, cardiac condition, and knee
pain.  Tr. 24-25.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 24-29.

3 - OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

4 - OPINION AND ORDER

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9ᵗʰ Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9ᵗʰ Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in substantial gainful activity from his April 1, 2010, alleged onset date through his December 31, 2010, date last insured. Tr. 24.

At Step Two the ALJ found before Plaintiff's date last

insured Plaintiff had the severe impairments of COPD and degenerative disc disease of the lumbar spine.  Tr. 24.  The ALJ found before Plaintiff's date last insured Plaintiff's impairments of a cardiac condition and knee pain were nonsevere. Tr. 25.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, before his December 31, 2010, date last insured. Tr. 26.  The ALJ found Plaintiff had the RFC to perform light work through his date last insured.  The ALJ also found before Plaintiff's December 31, 2010, date last insured Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; could stand and walk for six hours in an eight-hour work day; could sit for six hours in an eight-hour work day; and could not work "in environments where he was exposed to temperature extremes or odors, fumes, dusts, or gases.  Tr. 26.

At Step Four the ALJ found Plaintiff had past relevant work as a firefighter-equipment repairer.  Tr. 30.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy before his date last insured.  Tr. 30.  Accordingly, the ALJ found Plaintiff was not disabled before his December 31, 2010, date last insured.

**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) improperly found at Step Two that Plaintiff's cardiac condition and knee pain were nonsevere during the relevant period; (2) improperly rejected Plaintiff's testimony; (3) improperly gave limited weight to the opinions of Teresa Tioran, D.O., treating physician, Harold Budhram, M.D., treating physician, and Paul Holmes, M.D., examining physician; (4) found at Step Three that Plaintiff's impairments did not meet or equal the criteria for any impairment in the Listing of Impairments; and (5) failed to include all of Plaintiff's functional limitations in his RFC.

**I.    The ALJ did not err at Step Two.**

Plaintiff asserts the ALJ erred at Step Two when she found Plaintiff's cardiac condition and knee pain were nonsevere during the relevant period.

As noted, at Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a),

(b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

Here the ALJ found Plaintiff's cardiac condition and knee pain were nonsevere during the relevant period.  On March 8, 2010, Scott Anderson, M.D., evaluated Plaintiff and concluded his cardiac condition resulted only in a 4% disability, that Plaintiff's cardiac condition was permanent and stationary, and that Plaintiff's cardiac condition was essentially normal. Tr. 315.  In March 2010 cardiac testing of Plaintiff revealed "mild ischemia, no infarct, and normal LV functioning."  Tr. 350. Similarly, in December 2010 Dr. Tioran indicated Plaintiff did not have any "significant coronary heart disease" and prescribed nitroglycerin to treat Plaintiff's angina.  Tr. 350.

The ALJ also noted Plaintiff underwent surgery on his right knee after he injured it falling out of a truck.  Tr. 494.  The record, however, does not reflect any ongoing treatment for Plaintiff's right knee after surgery during the relevant period.

On this record the Court concludes the ALJ did not err when she found Plaintiff's cardiac condition and knee pain were

nonsevere during the relevant period because the ALJ provided legally sufficient reasons supported by the record for doing so.

In addition, the Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor). As noted, at Step Two the ALJ found Plaintiff has the severe impairments of COPD and degenerative disc disease of the lumbar spine.

Because the ALJ resolved Step Two in Plaintiff's favor, the Court concludes any error by the ALJ in finding Plaintiff's knee pain and cardiac condition to be nonsevere is harmless.

**II.  The ALJ provided clear and convincing reasons for partially rejecting Plaintiff's testimony.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th

11 - OPINION AND ORDER

Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.
*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he suffered lower-back
pain, radicular leg pain, right-knee pain, and shortness of
breath.  Tr. 42-43.  Plaintiff testified he was only able to lift
a gallon of milk occasionally, and he suffered pain when he bent
over.  Tr. 44, 45.  Plaintiff stated he could spend "close to an
hour" standing and could sit for forty-five minutes.  Tr. 45, 46.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause some of the
alleged symptoms," but Plaintiff's testimony "concerning the
intensity, persistence and limiting effects of [his] symptoms are
not entirely credible" as to the relevant period.  Tr. 27.

The ALJ noted the medical record during the relevant period reflects Plaintiff's pulmonary function test in March 2010 was consistent with "mild to moderate mixed pattern with obstruction and restriction."  Tr. 450.  At a May 2010 examination Plaintiff's lungs were clear to ausculation in all lobes. Tr. 417.  The ALJ noted in April 2010 Plaintiff denied radicular symptoms of back and leg pain.  Similarly in June 2010 Plaintiff had a "negative straight leg-raising test . . . [and] a normal sensory and motor exam . . . gain was also noted to be normal . . . [without any] evidence of lumbar radiculopathy."  Tr. 280. After undergoing medial branch blocks on the right side of his back in March 2010, Plaintiff experienced a 75 percent improvement in his pain symptoms.  Tr. 278.  After undergoing radio-frequencing on the left side of his back in June 2010 Plaintiff reported decreased pain on his left side as well. Tr. 283.  As noted, in March 2010 cardiac testing of Plaintiff revealed "mild ischemia, no infarct, and normal LV functioning." Tr. 350.  Similarly, in December 2010 Dr. Tioran indicated Plaintiff did not have any "significant coronary heart disease" and prescribed nitroglycerin to treat Plaintiff's angina. Tr. 350.

On this record the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not entirely

credible as to the limiting effects of impairments during the
relevant period.  The Court, therefore, concludes the ALJ did not
err when she rejected Plaintiff's testimony in part.

**III. The ALJ did not err when she gave limited weight to the
opinions of Drs. Tioran, Budhram, and Holmes.**

Plaintiff contends the ALJ erred when she gave limited
weight to the opinions of Drs. Tioran, Budhram, and Holmes.

An ALJ may reject a treating or examining physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record."  *Thomas v.
Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical
opinion of a treating physician is uncontroverted, however, the
ALJ must give "clear and convincing reasons" for rejecting it.
*Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821,
830-32 (9th Cir. 1995).

**A.  Dr. Tioran**

On December 29, 2009, Dr. Tioran, Plaintiff's treating
cardiologist, filled out a Medical Treatment/Return to Work form
for Plaintiff's employer, the California Department of Forestry
and Fire Protection, in which she opined Plaintiff would not be
able to return to his work as a firefighter-equipment manager,
but he would be able to return to other work as long as it did

14 - OPINION AND ORDER

not involve fumes or emissions.  Tr. 513.

On December 15, 2010, Dr. Tioran provided an opinion letter in which she stated Plaintiff suffered from Prinzmetal angina, which limited his ability to engage in "high-stress" activities that "precipitate his symptoms of angina."  Tr. 348. Dr. Tioran noted Plaintiff had also been diagnosed with restrictive lung disease that "limits his ability to work in that he cannot work in areas with exhaust fumes."  Tr. 348. Dr. Tioran opined Plaintiff could "do a low stress job and he can sit for six to eight hours a day.  He can stand or walk for up to four hours a day."  Tr. 348.

After a September 20, 2011, examination of Plaintiff, Dr. Tioran filled out a Cardiac Impairment Questionnaire in which she opined Plaintiff could sit for two hours in an eight-hour work day and stand or walk for two hours in an eight-hour work day.  Tr. 441.  Dr. Tioran opined Plaintiff would be absent more than three times per month and he was "incapable of even low [work] stress."  Tr. 443.  Dr. Tioran noted the "earliest date that the description of [Plaintiff's] symptoms and limitations [set out in] this questionnaire applies" was September 24, 2008. Tr. 443.

Finally, on August 15, 2013, Dr. Tioran provided a medical opinion in which she stated Plaintiff could sit for two hours in an eight-hour work day, stand or walk for two hours in

15 – OPINION AND ORDER

an eight-hour work day, and could lift up to ten pounds
occasionally.  Tr. 605.  Dr. Tioran opined Plaintiff became
disabled on April 1, 2010.  Tr. 605.

        The ALJ gave Dr. Tioran's September 2011 and August
2013 opinions little weight as to the issue of Plaintiff's
limitations during the relevant period on the grounds that
Dr. Tioran offered those opinions years after Plaintiff's date
last insured and they are not consistent either with the medical
record for the relevant period or with Dr. Tioran's own medical
opinions offered during the relevant period.  For example, as
noted, in December 2010 (which is during the relevant period)
Dr. Tioran opined Plaintiff could "do a low stress job and
[could] sit for six to eight hours a day [and] stand or walk for
up to four hours a day."  Tr. 348.

        The ALJ gave limited weight to those portions of
Dr. Tioran's December 2010 opinion related to Plaintiff's lung
issues on the ground that Dr. Tioran treated Plaintiff only for
his cardiac issues.  The ALJ adopted those portions of
Dr. Tioran's December 2009 and December 2010 opinions related to
Plaintiff's cardiac issues.

        On this record the Court concludes the ALJ did not err
when she gave little weight to Dr. Tioran's September 2011 and
August 2013 opinions and to the portions of Dr. Tioran's December
2010 opinion related to Plaintiff's lung issues because the ALJ

16 - OPINION AND ORDER

provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.    Dr. Budhram**

On February 8, 2013, Dr. Budhram, treating physician, completed a Residual Functional Capacity Form and a Multiple Impairment Questionnaire in which he noted Plaintiff suffers from chronic daily back and knee pain due to arthritis and degenerative disc disease.  Tr. 594.  Dr. Budhram noted Plaintiff can sit four hours in an eight-hour work day and stand or walk for one or two hours in an eight-hour work day.  Tr. 600. Dr. Budhram opined Plaintiff would be absent from work two to three times per month, Plaintiff is not able to "do a full time competitive job," and Plaintiff would "never" be able to return to work.  Tr. 594, 602-03.

The ALJ gave Dr. Budhram's February 2013 opinion little weight on the grounds that Dr. Budhram offered his opinion years after Plaintiff's December 31, 2010, date last insured, and his opinion is inconsistent with the medical record for the relevant period.  For example, as noted, the record reflects Plaintiff underwent surgery on his right knee after he injured it falling out of a truck.  Tr. 494.  The record, however, does not reflect any ongoing treatment for Plaintiff's right knee after surgery during the relevant period.  Similarly, the record reflects in April 2010 Plaintiff denied radicular symptoms of back and leg

pain.  In June 2010 Plaintiff had a "negative straight leg-raising test . . . [and] a normal sensory and motor exam . . . gain was also noted to be normal . . . [without any] evidence of lumbar radiculopathy."  Tr. 280.  After undergoing medial branch blocks on the right side of his back in March 2010, the record reflects Plaintiff experienced a 75 percent improvement in his pain symptoms.  Tr. 278.  After undergoing radio-frequencing on the left side of his back in June 2010, Plaintiff reported decreased pain on his left side as well.  Tr. 283.

On this record the Court concludes the ALJ did not err when she gave little weight to Dr. Budhram's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.  Dr. Holmes**

On January 12, 2010, Dr. Holmes filled out a Medical Treatment/Return to Work form for the California Department of Forestry and Fire Protection in which he opined Plaintiff could not engage in any "prolonged" sitting, bending, or stopping and could lift up to 25 pounds occasionally.  Tr. 512.  Dr. Holmes opined Plaintiff would not be able to return to "full duty" as a firefighter-equipment manager.  Tr. 512.

The ALJ gave Dr. Holmes's opinion little weight on the grounds that it was offered before Plaintiff's April 1, 2010, alleged onset date and was inconsistent with the objective

medical evidence during the relevant period.  As noted, during
the relevant period several doctors opined Plaintiff was able to
work, that he did not suffer a severe cardiac condition, that his
knee and back conditions had improved, and that his lung
condition did not prevent him from performing any work.  In
addition, the record does not contain any treatment records of
Plaintiff by Dr. Holmes, and in his one-page opinion Dr. Holmes
did not identify any medical records on which he relied.

On this record the Court concludes the ALJ did not err
when she gave little weight to Dr. Holmes's opinion because the
ALJ provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

**IV.  The ALJ did not err at Step Three.**

At Step Three the ALJ found Plaintiff did not have "an
impairment or combination of impairments that met or medically
equaled the severity" of a Listed impairment during the relevant
period.  The ALJ considered respiratory listings, including
Listing 3.02 and back pain listings including Listing 1.04.

At Step Three the Commissioner must determine whether a
claimant's impairments meet or equal one of the listed
impairments and are so severe that they preclude substantial
gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).

Plaintiff does not indicate the listing that his impairments
allegedly satisfied during the relevant period nor the manner in

19 - OPINION AND ORDER

which he asserts his impairments met Listing 3.02 or Listing 1.04 during the relevant period.  The Ninth Circuit has held a court cannot conclude an ALJ's analysis as to a listing is erroneous when a claimant does not proffer any plausible theory as to how his impairments satisfy the specific criteria of the listing. *See, e.g., Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

In addition, as noted, the ALJ evaluated the medical record during the relevant period and concluded Plaintiff's impairments during that period did not preclude substantial gainful activity.

Accordingly, the Court concludes the ALJ did not err at Step Three.

**V.    The ALJ did not err at Step Five.**

Plaintiff contends the ALJ erred at Step Five when she found Plaintiff could perform other jobs in the national economy because the ALJ failed to consider the limitations indicated by Plaintiff and Drs. Tioran, Badhram, and Holmes.

Because the Court has found the ALJ properly rejected Plaintiff's testimony in part and properly assigned limited weight to the opinions of Drs. Tioran, Badhram, and Holmes, the Court concludes the ALJ did not err at Step Five when she failed to include all of the limitations indicated by Plaintiff and Drs. Tioran, Badhram, and Holmes in her assessment of Plaintiff's ability to do other jobs existing in the national economy.

Accordingly, the Court concludes the ALJ did not err at Step Five when she concluded Plaintiff could perform other work in the national economy because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 1st day of February, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

21 - OPINION AND ORDER